IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LARRY GARCIA LUNA,               §
           Petitioner,        §
                              §
v.                               §          C.A. NO. C-06-412
                              §
NATHANIEL QUARTERMAN,            §
           Respondent.       §

## MEMORANDUM AND RECOMMENDATION
## ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently incarcerated at the Ramsey Unit. Proceeding pro se, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on September 18, 2006. (D.E. 1). On December 22, 2006, respondent filed a motion for summary judgment, arguing that the petition is time barred and, in the alternative, petitioner's claims are without merit. (D.E. 15). For the reasons stated herein, it is respectfully recommended that respondent's motion for summary judgment be granted.

## I. JURISDICTION

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2254, which provides that jurisdiction is proper where the inmate is confined, or where the conviction was obtained. Wadsworth v. Johnson, 235 F.3d

959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 28th Judicial District Court of Nueces County, Texas, and therefore, jurisdiction is proper in this Court.

## II.  BACKGROUND

**A.    Procedural Background.**

Respondent has lawful custody of petitioner pursuant to a judgment and sentence of the 28th Judicial District Court of Nueces County, Texas, in cause number 99-CR-1816-A, styled The State of Texas v. Larry Luna.  Ex parte Luna, App. No. WR-62,200-02, at Clerk's Summary.  On January 11, 2001, a jury found petitioner guilty of nine counts of aggravated sexual assault to a child and one count of injury to a child.  The State of Texas v. Larry Luna, Cause No. 99-CR-1816-A, Reporter's Record, vol. 2, at 97-98.[1]  On January 12, 2001, following the punishment phase of the trial, the jury sentenced him to eighteen years imprisonment for each of the nine counts of aggravated sexual assault of a child, and two years imprisonment for injury to a child.  Ex parte Luna, App. No. WR-62,200-02, at Clerk's Summary.

On February 21, 2002, the Thirteenth Court of Appeals of Texas affirmed his conviction.  Luna v. State, 70 S.W.3d 354 (Tex. App. 2002).  On April 24,

---

[1] The Reporter's Record will be designated as "R.R." with the volume number preceding it and the page numbers following the designation.

2002, he filed a petition for discretionary review to the Texas Court of Criminal Appeals.  Luna v. State, No. 0585-02.  On August 15, 2002, the Texas Court of Criminal Appeals refused his petition for discretionary review.

On May 23, 2005, petitioner filed a state application for writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals without written order on an unspecified date.  Ex parte Luna, App. No. WR-62,200-01, at cover.  On August 21, 2006, he filed a second state application for writ of habeas corpus.  Ex parte Luna, App. No. WR-62,200-02.  On August 30, 2006, his second application for state habeas relief was dismissed as a subsequent application in violation of article 11.07 of the Texas Code of Criminal Procedure.  Id. at cover.  On September 18, 2006, he filed this petition.  (D.E. 1).  Respondent filed a motion for summary judgment on December 22, 2006.  Petitioner has not filed a response to the motion for summary judgment.

## B.    Factual Background.

Petitioner was charged with nine counts of aggravated sexual assault on the daughter of his girlfriend and one count of injury to a child.  These assaults occurred when the victim was between the ages of seven and nine.  Luna, 70 S.W.3d at 356.

During the police investigation, petitioner " admitted committing various

3

sexual offenses against the child, including anal intercourse.  He also admitted hitting her." <u>Id.</u> at 356-57.

During his trial, petitioner's confession was put into evidence.  The victim testified about the assaults, and her mother "testified about the child's outcry statement." <u>Id.</u> at 357.  Moreover, "[a] sexual assault nurse examiner from Driscoll Children's Hospital testified that the child's physical examination revealed tears in her anus and bruises on her buttocks." <u>Id.</u>  Petitioner also testified at his trial, denying that he assaulted his girlfriend's daughter. <u>Id.</u>  After three hours of deliberation, the jury convicted petitioner on all ten counts. <u>Id.</u>

The next day, the jury heard evidence regarding punishment for petitioner.  His girlfriend discussed "the after-effects of the sexual assaults upon the child," explaining "that the child had many problems, including "compulsive lying," fantasizing, nightmares, difficulty in school and toileting accidents." <u>Id.</u>  The jury also heard from the victim's counselor:

> He testified that the child's problems included self-hatred, self-mutilation, difficulties with school and socialization, nightmares, toileting accidents, fears, and fantasizing.  He said that these symptoms "normally accompany severe stress and trauma.  As an example, he testified that one of the child's fantasies was that "she saw a demon in her room who told her that he had made her stepfather do these things to her."  The child believes the demon to be real.  According to Ward, the fantasy is a type of withdrawal from reality.

4

Id.

During the punishment phase deliberations, the jury sent out three notes.  Id. The first note was sent at 3:18 p.m. asking whether they could have copies of the girlfriend's and the child's counselor's testimony.  Id.  After receiving this note,

> [t]he trial judge summoned the attorneys and told them she was going to inform the jury that the only way they could obtain a transcript of the testimony was to certify to the court that they were in disagreement about the testimony of the witnesses.  Neither attorney objected to the judge's response to Note One.

Id.  At 3:30 p.m, the jury sent out a second note, which asked:

> "Given todays [sic] testimony of these 2 people, doubts have been created in the minds of some jurors that may effect [sic] their priore [sic] decision; are jurors allowed to change their decision after hearing the testimony that has created doubts in their minds?"

Id.  At 3:43 p.m, the jury sent out a third note, which explained "that the jury was in disagreement about [the girlfriend's] testimony concerning the child's compulsive lying, and requested a transcript of that testimony."  Id.  As a result, "[t]he trial court recalled the parties and jurors to the courtroom, and the testimony in question was read back to the jury."  Id.

Next, the judge sent the jurors back to their deliberation before discussing with the prosecutor and defense counsel the second note concerning whether jurors

could change their guilt deliberation decisions.  Id.  This discussion ensued:

> Defense Counsel:  This is our position on this.  We think that jury note number 2 is an indication of the jury's expressing reasonable doubt of the guilt/innocence of my client.  The first thing I would do is ask the Court to instruct a verdict in our favor, a verdict of acquittal in each of the counts because of note number 2.  So that's what I'm going to ask you to do right now.
>
> The Court:  I think it's important to identify those jurors if, in fact, they have reasonable doubt as to guilt.  And I think it's important for the record to know that, whether they have some doubt and which ones are they, if we're going to go that way.  But at first I think we need to do one step at a time.  Let me give them a few more minutes.
>
> Defense Counsel:  That is fine, Judge.
>
> Prosecutor:  Judge, just in response to [defense counsel's] requesting for instructed verdict, I think that would be totally inappropriate because they definitely didn't say every single one of us had doubts.
>
> Defense Counsel:  Well, all it takes is one to have a doubt.
>
> Prosecutor:  For a hung jury.
>
> Defense Counsel:  For a hung jury, right
>
> Prosecutor:  But not for an instructed verdict.
>
> Defense Counsel:  ... we are first moving for that, we're going to ask for that.  The second thing is if the Court denies that then we're going to ask for a mistrial.
>
> The Court:  Okay.  Bring your case law and we will give

6

the jury some time.

Id. at 357-58.  After a brief recess, the discussion among the judge, the prosecutor

and the defense attorney continued:

>               The Court:  ... [the] response to question 2 would be,
>               "You must determine the case upon the evidence which
>               you have heard and the exhibits which have been
>               admitted into evidence during the punishment phase of
>               this trial."  Any objection by the State?
>
>               Prosecutor:  None, Your Honor.
>
>               Defense Counsel:  I have no objection, Judge.  I will say
>               for the record that I'm not sure that that answers the
>               jury's question.  But I don't know of any other way at
>               this point.
>
>               Prosecutor:  And Judge, I was going to suggest maybe,
>               "Continue your deliberation on the punishment phase."
>
>               Defense Counsel:  Oh, I'm not going to suggest that.  No.
>
>               The Court:  Let's not push it.

Id. at 358.  At about 7:00 p.m. that night, the jury returned with its punishment

verdict.  "The jurors were polled, and each stated that the verdict was his individual

verdict."  Id. (emphasis added).

Petitioner filed a pro se motion for a new trial.  He attached an affidavit to

this motion from one of the jurors.  Id.  Her affidavit stated, in part:

>               There were two testimonies that came to light after we
>               had reached the verdict of guilty.  If I had personally

7

> heard this before we reached the verdict, my decision
> would have been not guilty, because of insufficient
> evidence.

Id.; see also (D.E. 1, at Ex. A). This juror also stated "I can honestly say that I

objected to both parties involved. The more I listened to what was said, the more

questions I had, yet I had to make a decision on what was given to us." (D.E. 1, at

Ex. A). She also seemed to raise the possibility that petitioner was framed by his

girlfriend, but at the same time acknowledged that he had confessed committing

the crime to the police: "Larry Luna just happened to be close to where [his

girlfriend] could FRY HIM, on the other hand, there is Mr. Luna's statement that

he gave to the police." Id. (emphasis added).

Petitioner's motion for a new trial was denied.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition:

(1) He claims he "was denied a fundamentally fair trial by the trial court's

refusal to give the jury the clear option to reconsider its guilty verdict in light of

the evidence presented at the punishment phase of the trial," (D.E. 1, at 10)

(emphasis in original);

(2) He claims he received ineffective assistance of counsel at trial because:

(a) "counsel failed to properly object and move for a mistrial which

8

caused a finding by the [Thirteenth] Court of Appeals that an issue brought before the [Thirteenth] Court of Appeals on direct appeal had been waived," id. at 11;

(b) "counsel failed to conduct an adequate pretrial investigation and familiarize himself with the facts and circumstances relevant and thus present evidence relevant concerning [the child's] compulsive lying and inability to distinguish reality from fantasy or imagination," and that if such evidence had been presented he would have been found not guilty, id. at 11-12; and

(c) "counsel failed to timely and properly advise Petitioner concerning the status of his petition for discretionary review and the statute of limitations pursuant to 28 U.S.C. Section 2244(d)," id. at 12.

## IV.  EXHAUSTION OF STATE REMEDIES

Respondent does not dispute that petitioner properly exhausted his state court remedies for his claim that the trial court violated his right to a fair trial, and for his claim that counsel's failure to object and move for a mistrial was ineffective assistance of counsel.  However, he asserts that because petitioner did not present his claim that counsel failed to adequately investigate and present evidence regarding the child's compulsive lying, as well as his claim that counsel failed to adequately advise him of his post-conviction remedies, in his first state habeas application, these claims should be dismissed as procedurally defaulted.  (D.E. 15,

at 6).

## A.    AEDPA's Exhaustion of Remedies Standard of Review.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal writ of habeas corpus from an inmate in state custody shall

not be granted unless the inmate has exhausted his remedies at law in the state

courts, or there is an absence of state court remedies or circumstances that render

state remedies insufficient to protect the individual's rights.  28 U.S.C.

§ 2254(b)(1); Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999) (citation omitted).

The exhaustion requirement ensures that state courts have an opportunity to

consider federal law challenges to state custody before the federal courts can

entertain such assertions.  Duncan v. Walker, 533 U.S. 167, 178-79 (2001)

(citations omitted).  The substance of a habeas petitioner's claim must have been

"fairly presented" to state courts before being presented to federal courts.  Nobles

v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (citing Picard v. Connor, 404 U.S.

270, 275 (1971)); accord Soffar v. Dretke, 368 F.3d 441, 465 (5th Cir. 2004)

(citing Duncan v. Henry, 513 U.S. 364, 366 (1995)).  In Soffar, the Fifth Circuit

explained:

> A claim is "fairly presented" to the state courts if there
> has been, for example, (1) reliance on pertinent federal
> cases employing relevant constitutional analysis ...; (2)
> assertion of the claim in terms sufficiently particular as to

> "call to mind" a specific right protected by the
> Constitution ...; or (3) allegations of a pattern of facts that
> is well within the mainstream of constitutional litigation.

368 F.3d at 465 (citations omitted).

The Fifth Circuit has determined that "[a] federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (per curiam) (citing Picard, 404 U.S. at 275-78). "[A] habeas petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court." Graham v. Johnson, 94 F.3d 958, 968 (5th Cir. 1996) (per curiam) (citation omitted). If a claim is "in a significantly different and stronger evidentiary posture than it was before the state courts," then the exhaustion requirement of § 2254(b) has not been met. Joyner v. King, 786 F.2d 1317, 1320 (5th Cir. 1986). The Fifth Circuit has determined that whether a claim has been exhausted depends on whether the additional support presented in federal court "fundamentally alter[s] the legal claim already considered by the state courts." Conner v. Quarterman, _ F.3d _, 2007 WL 210342, at *4 (5th Cir. Jan. 29, 2007).

The exhaustion "requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Whitehead, 157

11

F.3d at 387 (citation omitted).  However, where new information provided by petitioner "does not fundamentally alter" the claim, but supplements the record, it "does not place the claim [] in a significantly different legal posture."  Morris v. Dretke, 413 F.3d 484, 496 (5th Cir. 2005) (citation omitted).  In Morris, the Fifth Circuit found that while the petitioner's claim was "in a comparatively stronger evidentiary posture," this was mitigated in favor of exhaustion due to several facts, including a finding that petitioner's brief in state court were detailed in both law and fact, the new evidence did not "fundamentally alter [the petitioner's] state claim," and nothing in the record indicated an "'attempt [] to expedite federal review by deliberately withholding essential facts from the state courts.'"  Id. (citations omitted).

Where a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then the claims are procedurally defaulted.  Nobles, 127 F.3d at 420 (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  Federal habeas relief may only be granted on procedurally defaulted claims if petitioner "can demonstrate cause for default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." Moawad v. Anderson, 143 F.3d 942, 947 (5th Cir. 1998) (citation omitted). A claim is procedurally barred from federal habeas review if the petitioner would be precluded from exhausting the same claim in state court pursuant to the Texas abuse of the writ doctrine. Horsley v. Johnson, 197 F.3d 134, 136-37 (5th Cir. 1999). A court may only consider barred constitutional claims on the merits if a petitioner claiming actual innocence "raise[s] a substantial doubt about his guilt." Parr v. Quarterman, 472 F.3d 245, 252 (5th Cir. 2006) (citations omitted).

Finally, a writ of habeas corpus may be denied on the merits regardless of whether petitioner exhausted his state remedies. 28 U.S.C. § 2254(b)(2).

**B.    Petitioner's Unexhausted Claims.**

**1.    Petitioner's Claim that Trial Counsel Failed to Adequately Investigate Child's Behavior.**

Petitioner claims that his counsel rendered ineffective assistance by failing to adequately investigate and present evidence of the child's propensity for untruthfulness. (D.E. 1, at 11-12). In his first application for state habeas relief, petitioner claimed that his counsel "failed to investigate and call all of [his] alibi witnesses at trial." Ex parte Luna, App. No. WR-62,200-01, at 11. In his second application for state habeas relief, he raised the claim that he raises in this petition, which is that counsel "failed to investigate and familiarize himself with the facts

13

and circumstances of the case against [petitioner] and thus failed to present evidence about the alleged Victim's propensity to lie and difficulty in ascertaining truth from fiction."  Ex parte Luna, App. No. WR-62,200-02, at 7.  The Texas Court of Criminal Appeals denied his second application because it was a subsequent application.

Although petitioner presented this claim in his second application for state habeas relief, the Fifth Circuit has held that a petitioner's "claim is precluded [if] he failed to exhaust his state court remedies and the state court to which he would be required to present his claims would now find those claims to be procedurally barred."  Horsley, 197 F.3d at 136-37.  The Texas courts have found petitioner's claim that his attorney was ineffective because of a failure to adequately investigate to be procedurally barred.  See Ex parte Luna, App. No. WR-62, 200, at cover (dismissing petitioner's subsequent application for habeas relief).

Therefore, this Court must determine whether or not this claim has been presented here in a "significantly different" posture than presented in state court in petitioner's first application for state habeas relief.  See Joyner, 786 F.2d at 1320.  This Court must compare the claim and its supporting legal arguments.  A claim is not fundamentally changed merely by the pleading of additional facts, as long as the additional information does not create a new argument.  See Morris, 413 F.3d

14

at 496 (citation omitted).

Here, it appears petitioner has gone beyond simply pleading additional facts. He relies on new grounds and arguments to support his denial of effective assistance claim.  When a petitioner's claim regarding counsel's failure to investigate takes a "180 degree turn" in federal court due to the presentation of specific factual allegations, "reasonable jurists would not find debatable that the state court did not have a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'"  Campbell v. Dretke, 117 Fed. Appx. 946, 958-59 (5th Cir. Dec. 9, 2004) (unpublished) (citing Soffar, 368 F.3d at 465).

Accordingly, it is respectfully recommended that petitioner has not fairly presented this claim to the state courts in a proper application for state habeas relief, and therefore, his claim is unexhausted and procedurally defaulted. Additionally, he provides no explanation for his failure to raise this claim in his initial state habeas proceeding.  Thus, it is respectfully recommended that he has not shown cause for this default, and therefore, is not entitled to relief on this claim.

### 2.    Trial Counsel Rendered Ineffective Post-Conviction Assistance.

Petitioner claims that his counsel failed to properly advise him regarding his petition for discretionary review and the federal habeas corpus statute of limitations.  (D.E. 1, at 12).  This claim was not brought in petitioner's state applications for habeas relief, and thus it is unexhausted.  Furthermore, petitioner would be procedurally barred from raising it in a subsequent state habeas application.  <u>See</u> Tex. Code Crim. Proc. art. 11.07 § 4.

It is respectfully recommended that he has not fairly presented this claim to the state courts in a proper application for state habeas relief, and therefore, his claim is unexhausted and procedurally defaulted.  Additionally, he provides no explanation for his failure to raise this claim in his initial state habeas proceeding. Thus, it is respectfully recommended that he has not shown cause for this default, and therefore, is not entitled to relief on this claim.

## V.  STANDARD OF REVIEW

## A.    Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. <u>Boyd v. Scott</u>, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to the AEDPA, "federal habeas relief is only merited where the state court decision is

both incorrect *and* objectively unreasonable." <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)); 28 U.S.C. § 2254(d)(1); <u>see also</u> <u>Riddle v. Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  <u>Id.</u> at 694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The <u>Bell</u> Court explained:

> A federal court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principles but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

<u>Id.</u> (citations omitted).

The Fifth Circuit has held that federal courts may not grant a writ of habeas corpus merely on the finding of an error by a state court, but rather only where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  A federal habeas court is to review only a state court's decision, and not the written opinion explaining its decision.  <u>Anderson v. Johnson</u>, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable.  <u>Montoya v. Johnson</u>, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [the court] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" <u>Gardner v. Johnson</u>, 247 F.3d 551, 560 (5th Cir. 2001).  The focus of the "unreasonable application" test of § 2254(d) is "on the ultimate legal conclusion that the state

court reached and not on whether the state court considered and discussed every angle of evidence."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)); see also Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998).  The presumption of correctness is accorded to adjudications made by a state court during review of a petitioner's state petition for habeas corpus relief. See Morrow, 367 F.3d at 315.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  The Fifth Circuit has stated that the presumption of correctness also applies to mixed questions of law and fact.  Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted).  Findings of fact may be implied from conclusions of law.  See Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.      Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and by drawing all reasonable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that summary judgment is not appropriate.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fields v. City of

S. Houston , 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on

the mere allegations of the pleadings to sustain his burden, but must set forth

material controverted facts in the response to the motion for summary judgment.

Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  Summary judgment is proper if the non-movant fails to make a showing

sufficient to establish the existence of an element essential to his case on which he

bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438,

441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

## VI.  DISCUSSION

**A.     Petitioner's Claims are Time Barred.**

**1.     Statute of Limitations Pursuant to AEDPA.**

AEDPA provides a one-year statute of limitations for state prisoners to

challenge a conviction by the filing of a federal petition for habeas corpus relief.

Prieto v. Quarterman, 456 F.3d 511, 514 (5th Cir. 2006) (citing 28 U.S.C.

§ 2241(d)).  A petitioner has one year from the date his conviction becomes final to

file his federal petition for habeas relief.  Id.  A properly filed state application for

post-conviction relief tolls the AEDPA period of limitations for the entire time the

state application is pending.  Id.  A state application for post-conviction relief is

pending "until the application has achieved final resolution through the State's post-conviction procedures." Carey v. Saffold, 536 U.S. 214, 220 (2002).  While a state application for post-conviction relief generally tolls the AEDPA limitations period, a state application for habeas relief that is not filed within the federal limitations period does not toll the limitation period under § 2244(d)(2).  Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

Under "rare and exceptional circumstances," equitable tolling may also apply pursuant to AEDPA.  In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)).  Equitable tolling may only apply "'where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable.'"  Id. (quoting Fierro, 294 F.3d at 682).  Petitioner's failure to comply with AEDPA's statute of limitations must result from "an extraordinary factor beyond the plaintiff's control" that prevents filing on time.  Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000).  Ignorance of the law, or a mistake by a petitioner is insufficient to warrant equitable tolling, even for a pro se petitioner.  See Cousin v. Lensing, 310 F.3d 843, 848-49 (5th Cir. 2002); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999).

In Cousin, the petitioner argued that "neither he nor his attorneys received notice of the denial of his IFP motion and therefore had no way of knowing that

the filing fee had become due." 310 F.3d at 848. He argued that the failure to

provide notice constituted an error by the court that warranted equitable tolling. Id.

The Fifth Circuit explained:

> Even if there were a failure of notice in this case, there
> was no affirmative statements ... on which Cousin could
> have relied. He was not deceived by the district court,
> nor did any party obstruct his attempts to obtain habeas
> relief. Instead, he was harmed by the failure, for almost
> two years, of his own attorney adequately to investigate
> the status of his petition.

Id. (emphasis added); see also United States v. Riggs, 314 F.3d 796, 799 (5th Cir.

2002) ("a petitioner's *own* ignorance or mistake does not warrant equitable tolling,

and it would be rather peculiar to treat a trained attorney's error more leniently

than we treat a *pro se* litigant's error") (emphasis in original). The Cousin court

further explained that "[a]dditional support for the proposition that attorney error

does not trigger equitable tolling is the longstanding rule that prisoners are entitled

to counsel during habeas proceedings and thus cannot state a claim for ineffective

assistance during those proceedings." 310 F.3d at 848 (citing Coleman, 501 U.S.

at 752). Thus, the Fifth Circuit held "that mere attorney error or neglect is not an

extraordinary circumstance such that equitable tolling is justified." Id. at 849; see

also Riggs, 314 F.3d at 799 ("If there were ever any doubt that an attorney's error

neglect does not warrant equitable tolling, our recent decision in Cousin ... erased

23

it.").

## 2. Petitioner Has Not Shown He is Entitled to Tolling of the Limitations Period.

Petitioner's conviction became final in 2002, following the denial of his petition for discretionary review.  While if he had filed a state application for habeas relief within the AEDPA's one-year limitations period, such an application would have tolled the limitations period, he instead waited nearly three years after the expiration of the limitations period to seek federal habeas relief.  See Scott, 227 F.3d at 263 ("[Petitioner's] state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired.") (italics in original).

Petitioner has presented no valid reason why his federal habeas petition was not filed within the one-year limitations period provided by the AEDPA.   He claims that counsel informed him that he had one year after filing his state application for habeas relief in which to file his federal petition.  In a letter dated July 27, 2004, "Counsel told Petitioner he had a year from the date his state 11.07 writ was denied in which to file a federal writ – Petitioner wholly relied on this information."  (D.E. 1, at 12); see also id., at Ex. B (July 27, 2004 letter from defense counsel).  This mistaken belief, even if upon the advice of counsel, does not excuse his failure to file his petition within the limitations period.  See Riggs,

314 F.3d at 799; Cousin, 310 F.3d at 848-49; see also Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) (per curiam) ("An alleged violation of [petitioner's right to effective assistance of appellate counsel] does not toll the AEDPA's statute of limitations.").

It is respectfully recommended that petitioner failed to timely file this petition within the AEDPA's one-year limitations period.  It is further respectfully recommended that he has presented no grounds upon which he is entitled to equitable tolling of the limitations period.  Thus, it is respectfully recommended that this petition be dismissed as time barred.

**B.     Alternatively, Petitioner's Claims are Without Merit.**

**1.     Application of AEDPA's Deference.**

The Texas courts have already considered and rejected petitioner's direct appeal and state habeas claims.  Ex parte Luna, App. No. WR-62,200-01, at cover. The Texas Court of Criminal Appeals denied his first state habeas application without written order.  Id.  This denial of petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  See Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal v. Puckett, 239 F.3d 683,

686 (5th Cir. 2001) (in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive").

Thus, deference to the state court decision is mandated by § 2254(d).  See Morrow, 367 F.3d at 313.  Petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's adjudication of his claims was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

### 2.    The Jury Reached a Unanimous Verdict, and The Trial Court Was Not Required to Direct Jury to Reconsider the Guilty Verdict.

Petitioner claims that he "was denied a fundamentally fair trial by the trial court's refusal to give the jury the clear option to reconsider its guilty verdict in light of the evidence presented at the punishment phase of the trial."  (D.E. 1, at 10).  The record shows that following the jury's guilty verdict, the jury was polled, and each juror agreed that the verdict of guilty on all counts was his or her verdict. 2 R.R. 99-100.  However, during the jury's deliberations in the punishment phase of the trial, a note was sent out explaining that some jurors had doubts based on testimony during the punishment phase, and inquiring whether they could change their verdict.  Luna, 70 S.W.3d at 357.  About ten minutes later, the jury sent out a

second note requesting that the testimony in question be read back to them.  Id.
The testimony in question was read to the jury, which then returned to the jury
room to continue deliberations.  Id.  After conferring with both the prosecutor and
defense counsel, neither of whom objected, the court instructed the jury to decide
the case based on the testimony and exhibits from the punishment phase.  Id.

Later, the jury returned a unanimous punishment verdict.  For each of the
sexual assault counts, the verdict forms gave the jury the option of sentencing
petitioner between either five or fifteen, and ninety-nine years, or life, in prison.
See 3 R.R. 42-47.  For the last count, the jury was given the option of sentencing
petitioner to between two and twenty years in prison.  3 R.R. 47.  The jury
sentenced petitioner to eighteen years in prison for each of the first nine counts,
and sentenced him to two years in prison for the tenth count.  3 R.R. 63-67.  When
polled, each juror agreed that the verdict was his or her verdict.  3 R.R. 67-69;
Luna, 70 S.W.3d at 358.

### a.    Review of Complaints About Jury Deliberations.

The Fifth Circuit has held that "[a] verdict is final if (1) the deliberations are
over, (2) the result is announced in open court, and (3) the jury is polled and no
dissent is registered."  United States v. White, 972 F.2d 590, 595 (5th Cir. 1992)
(citation omitted); see also United States v. Branch, 91 F.3d 699, 721 (5th Cir.

27

1996) ("The jury's verdict became final when it was announced in open court and the defendants were given the opportunity to poll the jury.").  In fact, "a judge errs in instructing the jury to deliberate further if the jury has reached a *final* verdict, which has been announced and recorded, ... or when [an] instruction [to continue deliberations] 'unduly coerce[s] the minority into surrendering its views for the purpose of rendering a verdict, or set[s] a time limit for the deliberations."  United States v. Straach, 987 F.2d 232, 242-43 (5th Cir. 1993) (citations omitted) (italics in original); see also White, 972 F.2d at 595 (holding that "the court should not have allowed the jury to reconsider its verdict on Count 1" after accepting the verdict).  The Straach court further explained:

> "Votes taken in the jury room prior to being returned in court are preliminary....  This applies particularly where more than one count has been submitted to the jury, for continuing deliberations may shake views expressed on counts previously considered.  Jurors are not bound by votes in the jury room and remain free to register dissent even after the verdict has been announced, though before the verdict is recorded."

Id. (citation omitted) (emphasis added).  "'[T]he unsolicited disclosure of the jury division ... is not by itself a ground for a mistrial.'"  Coleman v. Quarterman, 456 F.3d 537, 548 (5th Cir.) (citation omitted), petition for cert. filed, _ U.S.L.W. _ (U.S. Dec. 11, 2006) (No. 06-8399).

The Fifth Circuit has determined that "[a] judge may encourage jurors who

28

are having difficulty reaching a verdict to deliberate longer, and to give due consideration to the views of their peers." Coleman, 456 F.3d at 547 (citation omitted).  Furthermore, "[a] trial judge enjoys wide latitude in deciding how to respond to a question from the jury." United States v. Mann, 161 F.3d 840, 864 (5th Cir. 1998) (citation omitted).  The Supreme Court has explained that any supplemental charge to the jury is to be considered "'in its context and under all the circumstances.'" Lowenfield v. Phelps, 484 U.S. 231, 237 (1988) (citation omitted).

The Fifth Circuit has explained that "the inability of the jury to agree on a punishment after finding defendant guilty under Texas' bifurcated trial system constitutes a manifest necessity for granting a mistrial." Baker v. Estelle, 711 F.2d 44, 47 (5th Cir. 1983) (per curiam).  The Fifth Circuit has long held that "[w]hen a jury should be discharged for failure to agree is usually a matter within the sound discretion of the trial court." Jenkins v. United States, 149 F.2d 118, 119 (5th Cir. 1945); accord United States v. DeLaughter, 453 F.2d 908, 910 (5th Cir. 1972). When there have been no objections to the charge given to the jury by the court, and a court has not been asked to declare a mistrial, "[a] defendant may not gamble on the verdict and secure a new trial if he loses." Jenkins, 149 F.2d at 119.

### b.      Petitioner's Claim of Trial Court Error Must Fail.

The record reveals that the jury completed deliberations on the guilt or innocence phase of petitioner's trial, that the guilty verdict was announced in open court, and that when the jurors were polled, no dissent was registered.  3 R.R. 99-100.  Petitioner claims that the jury's <u>unsolicited</u> note regarding the status of their deliberations entitles him to relief, and that the trial judge erred in his instruction to the jury to continue deliberations.  However, he has not shown that the judge abused his discretion in directing the jury to continue deliberations.  He has also failed to demonstrate that the judge's instruction to the jury unduly coerced the minority jurors into surrendering their views, or that it set a time limit for deliberations.

If the jury had truly believed that based upon the additional testimony, petitioner was innocent, it could have refused to return a punishment verdict; however, the record shows that the jury returned a <u>unanimous</u> punishment verdict.  In addition, the punishment the jury determined to be appropriate was above and beyond the minimum punishment stated on the jury form for the counts charged.  Petitioner has shown the Court no authority for his assertion that the trial judge should have <u>undone</u> the jury's announced verdict and instructed the jury to resume deliberations on the petitioner's guilt or innocence.

As respondent notes, (D.E. 15, at 15-16), petitioner bears the burden of showing that any purported constitutional error by the trial court "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Pursuant to AEDPA, petitioner must also show that the state court's adjudication of his claim was contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d).

This Court must apply the "look through" doctrine to the Texas Court of Criminal Appeals' denial of petitioner's state habeas application by reviewing the last reasoned decision of the state courts on this claim. See Bledsue v. Johnson, 188 F.3d 250, 256 (5th Cir. 1999). The Thirteenth Court of Appeals denied petitioner's claim of trial court error, and explained that the interpretation of state law petitioner argued was contrary to the Legislature's intent because it "would in effect transform the determination of guilt and punishment into a single proceeding." Luna, 70 S.W.3d at 362. The Fifth Circuit has held that the "[p]roper interpretation of state law is *not* cognizable in federal habeas proceedings." Beazley v. Johnson, 242 F.3d 248, 261 (5th Cir. 2001) (emphasis in original). Petitioner has not shown that the state court's actions deprived him of a fair trial, or that the state court's adjudication of this claim was unreasonable or contrary to

federal law.

It is respectfully recommended that petitioner's claim that the trial court erred by not instructing the jury to reconsider it's guilty verdict during the punishment phase of the trial is without merit.

### 3.      Petitioner Did Not Receive Ineffective Assistance of Counsel.

### a.      Standard of Review for Claims of Ineffective Assistance of Counsel Pursuant to <u>Strickland v. Washington</u>.

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching." <u>Granados v. Quarterman</u>, 455 F.3d 529, 534 (5th Cir.), <u>cert. denied</u>, 127 S. Ct. 732 (2006). To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) that the deficient performance resulted in actual prejudice. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. <u>See</u> <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  <u>Strickland</u>, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  <u>Id.</u> at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  <u>Id.</u> at 690; <u>see</u> <u>also</u> <u>Romero v. Lynaugh</u>, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  <u>Yohey v. Collins</u>, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  <u>Johnson v. Dretke</u>, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted).  However, a reviewing court need not consider the deficiency prong if it concludes that petitioner has failed to show actual prejudice.  <u>Strickland</u>, 466 U.S. at 697; <u>Amos v. Scott</u>, 61 F.3d 333, 348 (5th Cir. 1995).

33

Under the second prong of the Strickland two-part test, petitioner may not simply allege, but must affirmatively prove actual prejudice, resulting from the ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test.  See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in a federal habeas proceeding).  He must establish "actual prejudice as a result of his counsel's ineffectiveness."  Moody v. Johnson, 139 F.3d 477, 482 (5th Cir. 1998) (citations omitted).  In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  See Miller, 200 F.3d at 282 ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not assert any resulting prejudice, the district court properly determined that these three

34

claims of ineffective assistance were conclusory.").  The Fifth Circuit has further

held that "'[i]n the absence of a specific showing of how these alleged errors and

omissions were constitutionally deficient, and how they prejudiced [petitioner], ...

we [can find] no merit to these [claims].'"  Id. (quoting Barnard v. Collins, 958

F.2d 634, 642 (5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to

ineffective assistance of counsel, petitioner must overcome the presumption of

correctness to which the state court's findings are entitled.  See Schaetzle v.

Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for

federal habeas purposes is *not* whether [petitioner made a showing under

*Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not*

make the *Strickland*-showing-was contrary to, or an unreasonable application of,

the standards, provided by the clearly established federal law (*Strickland*), for

succeeding on his IAC claim.").

### b.   Petitioner Has Not Proven His Counsel's Failure to Object Deprived Him of a Procedural Right.

Petitioner claims that "counsel failed to properly object and move for a

mistrial which caused a finding by the Court of Appeals that an issue brought

before the Court of Appeals on direct appeal had been waived."  (D.E. 1, at 11).

The Thirteenth Court of Appeals stated:

> The record reflects ... that [petitioner] never formally
> moved for a mistrial.  He told the trial court "...if the
> Court denies [the request for an acquittal], then we're
> going to ask for a mistrial."  However, although the trial
> court implicitly denied the motion for acquittal,
> [petitioner] never asked for a mistrial.  In fact,
> [petitioner] acquiesced to the continuation of jury
> deliberation.  Furthermore, appellant's attorney urged his
> objection only on the ground that the jurors had
> "express[ed] reasonable doubt of the guilt/innocence of
> my client."  He made no objection based on article 37.07,
> section 3(c) of the Texas constitution, or the federal
> constitution.  Without proper preservation, even
> constitutional error may be waived.  Tex. R. App.  P.
> 33.1(a); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim.
> App. 2000); *Dewberry v. State*, 4 S.W.3d 735, 752 & n.
> 16 (Tex. Crim. App. 1999).  Accordingly, we hold
> [petitioner] has failed to preserve these issues for our
> review, and they are waived.

Luna, 70 S.W.3d at 359 (emphases added).  The court determined that petitioner

did "not argue on appeal that any error present is fundamental or structural error,

which may be raised for the first time on appeal."  Id. at n.3.

The Fifth Circuit has determined that counsel's failure to make a frivolous

objection does not cause counsel's conduct to fall below an objective standard of

reasonableness.  Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) (citation

omitted).  Furthermore, pursuant to Strickland, the petitioner must show that "but

for counsel's failure to object, the outcome of his trial would have been different."

Id.; see also Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("Even if the

36

defendant shows that particular actions of counsel were unprofessional and unreasonable, the defendant must also 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (citation omitted).  Addressing a claim similar to petitioner's, the Fifth Circuit stated:

> When distilled, the prejudice question becomes whether, because [the petitioner's] counsel did not object, [the petitioner] was deprived of the procedural right, vested by [state law], to a mistrial/new trial.  In this regard, the application in *Lockhart* of the *Strickland* prejudice prong guides the way.  *Lockhart* reminds that the prejudice prong "focuses on ... whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive procedural right to which the law entitles him."

Pratt v. Cain, 142 F.3d 226, 232 (5th Cir. 1998) (quoting Lockhart, 506 U.S. at 372).  In Pratt, the Fifth Circuit concluded that because the petitioner had not shown a procedural right to a mistrial pursuant to state law, he was not entitled to federal habeas relief.  Id. at 233.  Thus, the question becomes whether but for counsel's failure to object, petitioner could have been entitled to a mistrial pursuant to Texas law.  See id.

The Texas Code of Criminal Procedure provides the following guidance regarding a mistrial:

> A jury shall be discharged if it fails to agree to a verdict
> after being kept together for a reasonable time.  If a jury
> is discharged because it fails to agree to a verdict, the
> justice or judge may impanel another jury as soon as
> practicable to try such cause.

Tex. Code Crim. Proc. art. 45.035 (Vernon supp. 2004).  The Texas Court of

Criminal Appeals has also held that "[a] mistrial is the trial court's remedy for

improper conduct that is 'so prejudicial that expenditure of further time and

expense would be wasteful and futile.'"  Hawkins v. State, 135 S.W.3d 72, 77

(Tex. Crim. App. 2004) (en banc) (citation omitted).  "Only in extreme

circumstances, where the prejudice is incurable, will a mistrial be required."  Id.

(citation omitted).  A mistrial may also be granted for manifest necessity, which

"exists where the circumstances render it impossible to arrive at a fair verdict,

where it is impossible to continue with trial, or where the verdict would be

automatically reversed on appeal because of trial error."  Brown v. State, 907

S.W.2d 835, 839 (Tex. Crim. App. 1995) (en banc).  The Texas Court of Criminal

Appeals has declared that the length of time a jury deliberates is within the trial

court's discretion.  DeLuna v. State, 711 S.W.2d 44, 48 (Tex. Crim. App. 1986)

(en banc).  Furthermore, "the trial judge is required to consider and rule out 'less

drastic alternatives' prior to granting a mistrial."  Brown, 907 S.W.2d at 839

(citations omitted).

38

Petitioner has not met his burden of proving that if counsel had properly requested a mistrial, he would have been entitled to a new trial pursuant to Texas law.  The record reveals that the trial judge instructed the jury to continue deliberations, and under Texas law, it was within the judge's discretion to do so. He has not demonstrated that the note sent out from the jury to the trial judge made it impossible for the jurors to reach a fair verdict, or to continue deliberations.  See Buxton v. Lynaugh, 879 F.2d 140, 147 (5th Cir. 1989) (conclusion "that a juror may have had some doubt about [petitioner's] guilt during the course of the proceedings ... would not suffice to support a motion for new trial").  In addition, the Thirteenth Court of Appeals did not reverse the jury's verdict for error. Petitioner has not demonstrated that but for counsel's failure to object, he would have been granted a mistrial pursuant to Texas law, and therefore he is not entitled to federal habeas relief.  See Pratt, 143 F.3d at 232-33.  Finally, he has not presented any reason that the state court's decision on his claim is contrary to federal law or unreasonable.

It is respectfully recommended that petitioner has failed to state a claim for federal habeas relief regarding his counsel's failure to object and request a mistrial.

### c.    Petitioner Has Not Proven Counsel Did Not Conduct an Adequate Pretrial Investigation.

Petitioner claims that he received ineffective assistance of counsel because counsel did not conduct an adequate investigation of his case to discover and present evidence of the child's compulsive lying.  (D.E. 1, at 11-12).  As discussed above, it is respectfully recommended this claim is unexhausted and procedurally defaulted.  However, even if the Court could consider this claim, he has failed to show that he is entitled to federal habeas relief.

In Strickland, the Supreme Court addressed a claim that counsel failed to properly investigate for and present mitigation evidence.  Sonnier v. Quarterman, _ F.3d _, 2007 WL 136460, at *4 (5th Cir. Jan. 22, 2007) (citation omitted).  The Strickland Court determined "that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Id. (citing Strickland, 466 U.S. at 691).  The prejudice prong of the Strickland test requires that petitioner not only affirmatively show that counsel's performance was deficient, but that he also "show a reasonable probability that the outcome of the proceeding would have been different if counsel's performance had been sufficient."  Conner, _ F.3d _, 2007 WL 210342, at *6 (citation omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial."  Sonnier, _ F.3d _, 2007 WL 136460, at *2, *4 (citation

omitted) (concluding that although deficient performance was shown, "the requisite showing of such prejudice has not been made").

Petitioner has presented no evidence that his counsel failed to adequately investigate the case and the victim's behavior prior to trial. Moreover, the record shows that even if petitioner's counsel had impeached the victim's testimony with evidence that she had trouble discerning truth from fiction, the outcome of the proceeding likely would have been the same. In addition to the repeated assertions of abuse by the victim to her mother, the sexual assault nurse examiner, and then to the jury in court, there were also physical signs of abuse. More important, petitioner's written confession severely undermines his assertion that the victim was untruthful. He has not demonstrated a reasonable probability that but for his counsel's purported failure to investigate, the outcome of the trial would have been different.

Although he provides an affidavit from a juror, (D.E. 1, Ex. A), in support of his contention that he would have been found not guilty, the affidavit does not unequivocally state that the juror would have found him not guilty. For example, she expressed concerns about his confession. Furthermore, she sentenced petitioner to eighteen years imprisonment for each of the first nine counts, and two years imprisonment for the last count. If the juror had believed petitioner to be

41

innocent, it is not reasonable to believe that she would have sentenced him at all, and especially not to more than the minimum punishment required by law.  It is respectfully recommended that petitioner has not made the requisite showing of prejudice.

It is respectfully recommended that petitioner has failed to state a claim for habeas relief for his claim that counsel failed to conduct an adequate pretrial investigation.

### d.      Petitioner Did Not Have a Right to Counsel for His Petition for Discretionary Review or Federal Habeas Petition, and Thus Cannot Claim Ineffective Assistance of Counsel.

Petitioner claims that his counsel failed to timely and properly advise him regarding the status of his petition for discretionary review, and failed to adequately advise him of the AEDPA statute of limitations.  (D.E. 1, at 12).  As discussed above, it is respectfully recommended that petitioner's claim is unexhausted and thus, procedurally defaulted.  However, even if it were not, petitioner has failed to state a cognizable claim for habeas relief.

The Supreme Court has not given federal habeas petitioners the right to counsel to attack their convictions past appeal:

> We have never held that prisoners have a constitutional
> right to counsel when mounting collateral attacks upon
> their convictions, and we decline to so hold today.  Our
> cases establish that the right to appointed counsel extends

> to the first appeal of right, and no further.  Thus, we have
> rejected suggestions that we establish a right to counsel
> on discretionary appeals.  We think that since a defendant
> has no <u>federal</u> constitutional right to counsel when
> pursuing a discretionary appeal on direct review of his
> conviction, *a fortiori*, he has no such right when
> attacking a conviction that has long since become final
> upon exhaustion of the appellate process.

<u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1990) (citations omitted) (emphasis added).

The Fifth Circuit has established that a petitioner's constitutional right to counsel on appeal ends when the appellate court confirms his conviction.  <u>Moore v. Cockrell</u>, 313 F.3d 880, 882 (5th Cir. 2002).  In <u>Moore</u>, like the petitioner in this case, the petitioner complained that he had never been notified of the outcome of his appeal.  <u>See id.</u> at 881.  The Fifth Circuit held that petitioner's appellate attorney's failure to timely notify him about his direct appeal did not constitute ineffective assistance.  <u>Id.</u> at 882.  Accordingly, it is respectfully recommended that petitioner's claim that counsel failed to adequately inform him of the status of his petition for discretionary review fails to state a claim for habeas relief.

Because petitioner does not have a constitutional right to counsel for his federal habeas petition, he cannot complain of ineffective assistance of counsel regarding the advice he was given about the limitations period.  <u>See Cousin</u>, 310 F.3d at 848 (citation omitted); <u>see also Irving v. Hargett</u>, 59 F.3d 23, 26 (5th Cir.

1995) ("Because a petitioner does not have a constitutional right to counsel in post-conviction habeas proceedings, it follows that a petitioner cannot claim ineffective assistance of counsel in such proceedings.") (citing Coleman, 510 U.S. at 752). Thus, it is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because counsel failed to correctly inform him of the limitations period for filing a federal petition for habeas relief is not cognizable.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). "The COA determination under § 2253(c) requires an overview of

the claims in the habeas petition and a general assessment of their merits." Miller-

El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to

claims denied on their merits, "[t]he petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims

debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard

requires a § 2254 petitioner to demonstrate that reasonable jurists could debate

whether the motion should have been resolved differently, or that the issues

presented deserved encouragement to proceed further. United States v. Jones, 287

F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a

petitioner must show both that "jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists

of reason would find it debatable whether the district court was correct in its

procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate

the denial of petitioner's § 2254 petition on substantive or procedural grounds nor

find that the issues presented are adequate to deserve encouragement to proceed.

45

Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that petitioner's claims be denied on the merits and as time barred.  Alternatively, it is respectfully recommended that petitioner's claims that his trial counsel failed to adequately investigate and that his trial counsel was ineffective in providing him post-conviction assistance were not exhausted and should be dismissed without prejudice.  Accordingly, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 15), be granted.  Finally, it is further respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 14th day of February 2007.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).